# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1456 | **DATE** | 7/25/2002 |
| **CASE TITLE** | Jeffrey Hargett, et al vs. Linda R. Baker, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' Motion to Dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 2 6 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| WAP | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JUL 25 2002

Judge Harry D. Leinenweber
U.S. District Court

| | |
|---|---|
| JEFFREY HARGETT, KIM A. OVERLIN, JIMMIE SMITH, and LOREN K. WALKER, individually, and on behalf of all persons similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 02 C 1456 |
| LINDA R. BAKER, Secretary of the Illinois Department of Human Services, MARY BASS, Head Facility Administrator for the Illinois Department of Human Services, TIMOTHY BUDZ, Facility Director of the Sexually Violent Persons Unit at the Joliet Correctional Center, RAYMOND WOODS, Clinical Director, and TRAVIS HINZE, Associate Clinical Director, | Hon. Harry D. Leinenweber |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Jeffery Hargett, Kim A. Overlin, Jimmie Smith, and Loren K. Walker brought this action individually and on behalf of a class of persons similarly situated against Defendants Linda R. Baker, Secretary of the Illinois Department of Human Services, Mary Bass, Head Facility Administrator for the Illinois Department of Human Services, Timothy Budz, Facility Director of the Sexually Violent Persons Unit at the Joliet Correctional Center, Raymond Woods, Clinical Director, and Travis Hinze, Associate Clinical

Director. Plaintiffs assert a civil rights action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief. Before the Court is Defendants' motion to dismiss the complaint in its entirety pursuant to FED.R.CIV.P. 12(b)(6).

## BACKGROUND

Concerned with alarmingly high recidivism rates among sex offenders, states began in the 1990's to enact civil commitment regimes for the detention and treatment of those found to be "sexual predators" or "sexually dangerous." Illinois revisited its existing regime for civil commitment of the "sexually dangerous" by enacting the Sexually Violent Persons Commitment Act in 1997. *See* 725 ILCS 207/1 *et seq*. Under Illinois' civil commitment program, a "sexually violent person" ("SVP") is defined as a "person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f). Once found to qualify as an SVP under the Act, the person is committed to the custody of the Sexually Violent Persons Unit operated by the Illinois Department of Human Services (the "DHS") at its Joliet Correctional Center. *See* 725 ILCS 207/40. SVPs confined under the Act remain in DHS

custody until such time as "the person is no longer sexually violent." 725 ILCS 207/40(a).

Plaintiffs filed a class action complaint challenging what they characterize as the impermissibly punitive conditions of their confinement and the constitutionally inadequate treatment they receive as detainees in the Sexually Violent Persons Unit in Joliet. Specifically, Plaintiffs contend that the punitive conditions and inadequacies of the treatment program work together to deprive SVPs at the Joliet facility of a realistic opportunity to progress through the treatment program and gain their release. Plaintiffs' class action complaint seeks, *inter alia*, a declaratory judgment that the conditions of confinement and mental health treatment of the SVPs violate rights protected by the Due Process Clause of the Fourteenth Amendment. Plaintiffs also request a permanent injunction against Defendants compelling them to implement a plan correcting the alleged constitutional deficiencies in the current program. Defendants now move to dismiss the complaint in its entirety.

## DISCUSSION

### Standard

In ruling on a motion to dismiss, a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). A motion to dismiss will not be

granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Motions to dismiss test whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer*, 416 U.S. at 236.

**Illinois Department of Human Services as Defendant**

Citing to the large body of cases dealing with municipal liability in § 1983 claims, Defendants claim that Plaintiffs' real action lies against the Department of Human Services and that the official capacity claims against them should be dismissed as redundant. Defendants ask the Court to disregard the well-established principle that states and state agencies enjoy immunity from suit in federal courts under the Eleventh Amendment. *See Federal Maritime Commission v. South Carolina State Ports Authority*, 525 U.S. \_\_\_ (2002)(reexamining the boundaries of state sovereign immunity under the Eleventh Amendment). In addition to Eleventh Amendment immunity from suit, neither a state nor a state agency is viewed as a "person" for purposes of § 1983 and are therefore not amenable to suit. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989). Despite the broad immunity from suit enjoyed by states and state agencies, plaintiffs may file actions for prospective relief against state officials in federal

court when they allege that enforcement of state law violates rights guaranteed by the federal Constitution. *See Ex parte Young*, 209 U.S. 123 (1908). Plaintiffs were correct in naming the officials in question, rather than the Department of Human Services, as the proper defendants in this case. *See Lett v. Magnant*, 965 F.2d 251, 256 (7th Cir. 1992).

## § 1983 - Inadequate Mental Health Treatment

Defendants assert that there is no set of facts Plaintiffs could produce to substantiate their claim that the treatment program provided to SVPs is constitutionally inadequate. As an initial matter, Defendants contend that substantive due process does not require states to provide mental health treatment to civilly detained, sexually violent persons. Contrary to Defendants' suggestion, the issue of whether or not involuntarily civilly committed SVPs possess a substantive due process right to meaningful mental health treatment was not definitively resolved by *Kansas v. Hendricks*, 521 U.S. 346 (1997). Indeed, the language used in *Hendricks* suggests divergent resolutions of this question. *Compare Id.* at 366 (stating that, even if the primary objective of the Kansas Act is to continue incarceration and not to provide treatment, "this does not rule out that an ancillary purpose of the Act was to provide treatment, and it does not require us to conclude that the Act is punitive"), *with Id.* at 368 n.4 (citing *Allen v. Illinois*, for the proposition that "the State serves its

purpose of treating rather than punishing sexually dangerous persons by committing them to an institution expressly designed to provide psychiatric care and treatment." 478 U.S. 364, 373 (1986)). The Illinois SVP Act is, however, distinguishable from the Kansas Act in one important aspect. As noted in *Hendricks*, the Kansas Supreme Court found that, in enacting the Kansas SVP Act, "the clear and overriding concern of the legislature [was] to continue the segregation of sexually violent offenders from the public. Treatment with a goal of reintegrating them into society [was] *incidental*, at best." 521 U.S. at 365 (citation omitted)(emphasis added). In contrast, the primary purpose of the Illinois SVP Act is to give the individual an opportunity to receive treatment for his propensity to commit sexual offenses. *See People v. Trainor*, 196 Ill.2d 318, 752 N.E.2d 1055, 1058-59 (Ill. 2001)(stating that, in creating and amending the Act, the primary objective of the Illinois legislature was to provide for individual treatment of SVPs "designed to effect recovery"). When, as in Illinois, treatment is used as a primary justification for civil confinement, fundamental fairness requires that the involuntarily civilly committed person receive such individual treatment as will provide him a meaningful chance to improve and win his eventual release. *See, e.g., Leamer v. Fauver*, 288 F.3d 532, 545 (3d Cir. 2002); *D.W. v. Rogers*, 113 F.3d 1214, 1217-18 (11th Cir. 1997); *Clark v. Cohen*, 794 F.2d 79, 92-95 (3d Cir. 1986).

The Court recognizes that, under the professional judgment standard set forth in *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982), states enjoy wide latitude in developing treatment regimens and that the decisions of the professional decision maker overseeing a state institution are presumptively valid. Liability may be imposed only when treatment decisions represent a "substantial departure from accepted professional judgment, practice, or standards." *Id.* While *Youngberg* certainly sets a high bar for Plaintiffs, the question of whether professional judgment has in fact been exercised by the administrators of the Joliet facility cannot be resolved on a motion to dismiss. Recent cases such as *McKune v. Lile*, 536 U.S. \_\_\_\_ (2002) may have made it extremely difficult for Plaintiffs to advance arguments regarding certain aspects of their treatment, but it is still possible that Plaintiffs could establish that Defendants failed to exercise professional judgment in other aspects of the SVP treatment program.

### § 1983 - Conditions of Confinement

Defendants repeatedly and vigorously remind the Court that cases such as *Youngberg* and *Sandin v. Conner*, 515 U.S. 472 (1995) require federal courts to afford "appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482 (citations omitted). Fair enough. Appropriate deference is not, however, unbounded

deference, which is precisely what Defendants seem to be seeking when they contend that Plaintiffs' challenge to the conditions of their confinement fails to state a claim upon which relief may be granted. While *Youngberg* and *Sandin* require substantial deference to the judgment of officials managing state institutions, these and other cases also recognize that this deference is not absolute.

For civil commitment of SVPs to operate within the bounds of the Constitution, a purpose of that confinement, even if it is only an ancillary purpose, must be treatment as opposed to continuing punishment for past crimes. *Kansas v. Hendricks*, 521 U.S. 346, 366-68 (1997). Moreover, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22. Reviewing a challenge to an earlier version of Illinois' Sexually Dangerous Persons Act, the Supreme Court found that the plaintiff in that case had not demonstrated that sexually dangerous persons in Illinois were confined under impermissibly punitive conditions. The Court also found that the conditions imposed on Illinois' SVPs at that time bore a reasonable relationship to the State's interest in treatment. *See Allen v. Illinois*, 478 U.S. 364, 373 (1986). However, the Court noted that "had petitioner shown, for example, that the confinement of such persons imposes on them a regimen which is essentially identical to that imposed upon felons with no

deference, which is precisely what Defendants seem to be seeking when they contend that Plaintiffs' challenge to the conditions of their confinement fails to state a claim upon which relief may be granted. While *Youngberg* and *Sandin* require substantial deference to the judgment of officials managing state institutions, these and other cases also recognize that this deference is not absolute.

For civil commitment of SVPs to operate within the bounds of the Constitution, a purpose of that confinement, even if it is only an ancillary purpose, must be treatment as opposed to continuing punishment for past crimes. *Kansas v. Hendricks*, 521 U.S. 346, 366-68 (1997). Moreover, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22. Reviewing a challenge to an earlier version of Illinois' Sexually Dangerous Persons Act, the Supreme Court found that the plaintiff in that case had not demonstrated that sexually dangerous persons in Illinois were confined under impermissibly punitive conditions. The Court also found that the conditions imposed on Illinois' SVPs at that time bore a reasonable relationship to the State's interest in treatment. *See Allen v. Illinois*, 478 U.S. 364, 373 (1986). However, the Court noted that "had petitioner shown, for example, that the confinement of such persons imposes on them a regimen which is essentially identical to that imposed upon felons with no

deference, which is precisely what Defendants seem to be seeking when they contend that Plaintiffs' challenge to the conditions of their confinement fails to state a claim upon which relief may be granted. While *Youngberg* and *Sandin* require substantial deference to the judgment of officials managing state institutions, these and other cases also recognize that this deference is not absolute.

For civil commitment of SVPs to operate within the bounds of the Constitution, a purpose of that confinement, even if it is only an ancillary purpose, must be treatment as opposed to continuing punishment for past crimes. *Kansas v. Hendricks*, 521 U.S. 346, 366-68 (1997). Moreover, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22. Reviewing a challenge to an earlier version of Illinois' Sexually Dangerous Persons Act, the Supreme Court found that the plaintiff in that case had not demonstrated that sexually dangerous persons in Illinois were confined under impermissibly punitive conditions. The Court also found that the conditions imposed on Illinois' SVPs at that time bore a reasonable relationship to the State's interest in treatment. *See Allen v. Illinois*, 478 U.S. 364, 373 (1986). However, the Court noted that "had petitioner shown, for example, that the confinement of such persons imposes on them a regimen which is essentially identical to that imposed upon felons with no

need for psychiatric care, this might well be a different case." *Id.* This may or may not be such a case. The bar which Plaintiffs must eventually clear to survive summary judgment on the conditions of confinement aspect of their claim is admittedly high, but it is not so insurmountable as to require the Court to hold that *no* set of facts, if proven, would entitle them to relief. Regardless of whether they will ultimately prevail on the merits, Plaintiffs' complaint challenging their treatment and the conditions of their confinement properly states a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is DENIED.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: July 25, 2002